OPINION
{¶ 1} Appellant, Kelly Mussinan, appeals from judgments of the Brown County Court of Common Pleas, Juvenile Division, adjudicating her two minor children neglected and dependent, and placing them in the temporary custody of the Brown County Department of Jobs and Family Services ("BCDJFS").
 {¶ 2} Appellant is the mother of C.M., born September 13, 1991, and C.W., born June 5, 1996. C.M. and C.W. are students at Ripley Elementary School, where C.M. is in the sixth grade and C.W. is in the first. On October 2, 2002, C.M.'s sixth-grade class went on a field trip to the Ohio Renaissance Festival. Appellant was one of several parents who attended the field trip as a chaperone. While traveling to the festival by school bus, one of the other parents voiced concern about appellant's behavior to one of the teachers, Michelle Lester. Lester observed appellant leaning over the seat in front of her, talking in an extremely loud voice. Concerned that appellant was intoxicated, Lester contacted the school's principal, Mary Ellen Shelton, via mobile phone. Shelton instructed Lester to pull appellant aside and tell her, among other things, that she would not be allowed to chaperone the students.
 {¶ 3} After the bus arrived at the festival, Lester and another teacher pulled appellant aside and told her they thought she had had too much to drink and that she was no longer going to be allowed to chaperone any of the students. Appellant denied being intoxicated, but Lester found it very difficult to talk with her because she "basically mumbled everything she said." Shelton had also instructed Lester to tell appellant that she was not allowed to go to the festival or be anywhere near the students, but Lester did not tell appellant everything that Shelton had instructed her to say because it "was an extremely, extremely embarrassing situation."
 {¶ 4} Appellant followed C.M. onto the festival grounds and talked to her several times. Lester observed that C.M. "was extremely upset, * * * she cried, she just didn't know what to do[.]" At one point, Lester felt compelled to summon a security guard, as Shelton had advised her to do if necessary; however, before the guard could intervene, appellant made a call on a pay phone and then left the festival grounds. On the way home, Lester spoke with C.M. who expressed great concern about what was going to happen to her. C.M. told Lester that she knew how to break into her house — something for which she had previously gotten into trouble with appellant — and that appellant had told her before she left that "she knew how to get into the house if she had to." C.M. told Lester that, normally, she went to her aunt's or uncle's residence if appellant was not going to be home, but she did not know if either of them would be at their residence that afternoon. Lester assured C.M. that she did not have to be concerned, and that she would be taken care of.
 {¶ 5} Shelton contacted BCDJFS and informed them of the situation. BCDJFS sent caseworker Jessica Roush to Ripley Elementary School to investigate the matter. After speaking with C.M. and learning of her concerns about where she going after school, and after being unable to locate Mussinan or the children's relatives, Roush decided to take custody of C.M. and C.W. BCDJFS subsequently filed a complaint in the Brown County Common Pleas Court, Juvenile Division, alleging that the children were neglected, pursuant to R.C. 2151.03(A)(2); abused, pursuant to R.C. 2151.031(B); and dependent, pursuant to R.C. 2151.04(C) and (D).
 {¶ 6} On October 30, 2002, an adjudicatory hearing was held. BCDJFS presented the testimony of Lester, Shelton and Roush, who testified to the facts related above. Shelton acknowledged under cross-examination that on the afternoon of the field trip, appellant called the school and requested, in accordance with its procedure, that a bus pass be drawn up, allowing her children to be dropped off after school at the residence of her mother, Jeanne Klump. Shelton acknowledged that such a pass had been drawn up, but when asked why it was not used, she replied, "I don't know."
 {¶ 7} Roush also testified that since May 1993, BCDJFS has received reports of 14 incidents regarding appellant, 11 of which have involved some type of substance abuse, and that "there have been * * * four ongoing cases" involving her. According to Roush, BCDJFS provided appellant with counseling regarding parenting and employment skills. Roush stated that appellant had been involved in substance abuse treatment, but did not complete it. Roush acknowledged that a substance abuse evaluation had been performed on appellant, and it was determined at that time that she did not need any further treatment.
 {¶ 8} Appellant did not testify on her own behalf at the adjudicatory hearing. Instead, she presented the testimony of Klump and her brother-in-law, David Chaney. Klump testified that appellant called her at about 2:00 p.m. on the day of the field trip and left a message on her answering machine, advising her that she had made arrangements to have the children's school bus drop them off after school at her (Klump's) residence. Klump testified that appellant called her back 15 to 20 minutes later to make sure she would be there to receive the children. Chaney testified that on the day of the field trip, appellant called him from the festival at approximately 11:30 a.m. to ask for a ride, and that he picked her up about one hour later. He stated she appeared to be sober when he picked her up. He also corroborated Klump's testimony regarding the telephone calls that appellant placed to the children's school and her mother in an attempt to have C.M. and C.W. dropped off after school at Klump's residence.
 {¶ 9} Following the close of evidence and the parties' final arguments, the trial court stated:
 {¶ 10} "Well the Court is going to find that based upon the testimony presented that on that particular day [i.e., the day of the field trip] that the children were dependent. And I think the Court can also find under the circumstances that the definition concerning the neglect of the children for lack of proper parental care because of the faults or habits of the parents, guardians or custodians. I think that testimony concerning the teachers as well as the principal and the agitated state of the children that I think the Court can also find that."
 {¶ 11} On December 9, 2002, the trial court held a dispositional hearing, after which it committed both children to the temporary custody of BCDJFS. Appellant now appeals, raising three assignments of error.
 {¶ 12} Assignment of Error No. 1:
 {¶ 13} "The trial court erred when it found [C.M.] and [C.W.] to be neglected children without any evidence the children lacked proper care."
 {¶ 14} Appellant argues that there was insufficient evidence presented to support the trial court's findings that C.M. and C.W. were neglected pursuant to R.C. 2151.03. We agree with this argument.
 {¶ 15} Parents have a fundamental right to rear their children as they see fit. See In re Murray (1990),52 Ohio St.3d 155, 157, and In re Zeiser (1999), 133 Ohio App.3d 338,340. However, this right may be forfeited where a child is adjudged neglected, pursuant to R.C. 2151.03; abused, pursuant to R.C. 2151.031; or dependent, pursuant to R.C. 2151.04. Giannelli McCloud Yeomans, Ohio Juvenile Law (2003 Ed.) 66, Section 9.2. To ensure that parental rights are not interfered with lightly, a public children services agency like BCDJFS must prove its allegation that a child is neglected, abused or dependent by "clear and convincing evidence." See R.C. 2151.35(A); see, also, Juv.R. 29(E)(4) (requiring trial court to determine the issues by clear and convincing evidence in dependency, neglect and abuse cases). "Clear and convincing evidence is that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 16} BCDJFS alleged that C.M. and C.W. were neglected pursuant to R.C. 2151.03(A)(2). That provision defines a neglected child as any child "[w]ho lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian[.]" Furthermore, R.C. 2151.011(B)(1) provides that: "`adequate parental care' means the provision by a child's parent or parents, guardian, or custodian of adequate food, clothing, and shelter to ensure the child's health and physical safety[.]" The term "shelter" has been interpreted to include the need for appropriate "parental supervision," even though those words are not expressly mentioned in the definition of adequate parental care. In re Zeiser, 133 Ohio App.3d at 340. This construction arises from dictionary definition of "shelter," which is "something that covers or affords protection [especially] from the elements: something that provides refuge or defense (as from injury, exposure, observation, attack, pursuit, danger, or annoyance): a means or place of protection: an area of safety[.]" See In re Zeiser, 133 Ohio App.3d at 340, citing definition of "shelter" in Webster's Third New International Dictionary (1986) 2093. In In re Zeiser, the court concluded that "it constitutes neglect per se to allow a six-year-old child to be left alone for two entire days per week on a regular basis and to be regularly left at other times under the supervision of his eight-year-old sibling." Id. at 348. (Emphasis sic.)
 {¶ 17} A parent's faults or bad habits do not constitute neglect, by themselves; it must be shown that the children lack appropriate care as a result of those faults or bad habits. Giannelli McCloud Yeomans, 69, Section 9:6. Thus, the fact that a parent is an alcoholic does not necessarily mean that his or her children are neglected; a causal link must be established between the parent's alcoholism and the child's neglected condition. Id., citing In re Sims (1983), 13 Ohio App.3d 37.
 {¶ 18} BCDJFS argues that we should uphold the trial court's finding of neglect based upon appellant's misconduct at the field trip and her history of substance abuse. We find this argument unpersuasive.
 {¶ 19} Initially, we reject appellant's assertion that BCDJFS failed to prove by clear and convincing evidence that she was intoxicated at the field trip. Appellant points out that no blood test was taken from her, and no field sobriety test was administered to her. However, it has long been established that "[w]hen it appears that an individual in all probability has sufficient experience to express an opinion as to whether or not a [person] is drunk or sober and opportunity to observe [that person] he [or she] may do so without further explanation."Reinheimer v. Greenville (App. 1930), 9 Ohio Law Abs. 573, 574.
 {¶ 20} In this case, Lester testified that she has been around people who have been intoxicated and is able to "recognize the signs[.]" Her testimony left little doubt that appellant arrived intoxicated at the field trip. Additionally, the trial court was free to give little or no weight to the fact that Lester did not smell alcoholic beverage on appellant at the time of their confrontation. The same is true for the testimony from appellant's brother-in-law (Chaney) that appellant appeared to be sober when he picked her up about one hour after she had left the festival. See Rogers v. Hill (1998), 124 Ohio App.3d 468, 470
(trier-of-fact is free to make its own determinations as to weight to be given evidence in light of its ability to observe the demeanor, gestures and voice inflections of the witnesses; also, trier-of-fact is free to believe all, part or none of any witness' testimony). Furthermore, appellant's showing up intoxicated to a field trip that she had volunteered to help chaperone was deplorable. Her actions did not simply embarrass C.M., as appellant herself concedes that they might have. Instead, appellant's behavior humiliated C.M. in front of her entire sixth-grade class.
 {¶ 21} Nevertheless, BCDJFS failed to present clear and convincing proof that appellant's children lacked adequate parental care, as defined in R.C. 2151.011(B)(1), as a result of appellant's faults or habits. There was no showing whatsoever that either child has ever been deprived of adequate food or clothing. As to the issue of "shelter," there was evidence that C.M. may have been deprived of adequate parental supervision at some point during the field trip. It appears from the evidence that appellant was to chaperone at least four of the students, C.M., presumably, being one of them. Any child who would have been chaperoned by appellant when she was intoxicated would have been subjected to inadequate parental supervision. However, it appears from the record that none of the children, including C.M., were ever actually subjected to appellant's sole parental supervision on the day of the field trip. Moreover, C.W. did not even attend the field trip, so she could not be considered neglected as a result of her mother's behavior on the field trip.
 {¶ 22} Furthermore, in order for BCDJFS to establish that C.M. and C.W. were neglected pursuant to 2151.03(A)(2), it was not enough for it to show that, on one occasion, appellant arrived intoxicated to help chaperone a school-related field trip. Instead, it had to demonstrate clearly and convincingly that appellant's problems with substance abuse are of such a nature that it deprives her children of adequate or proper parental care. BCDJFS did present evidence showing that since May 1993, it has received reports of 14 incidents concerning appellant, with 11 of them involving some kind of substance abuse. However, BCDJFS failed to present any evidence regarding the details of these incidents, including when they occurred. The same is true for the four ongoing cases in which appellant is reportedly involved. Most importantly, Roush acknowledged that a substance abuse evaluation had been performed at some point on appellant (no testimony was presented as to exactly when), and it was determined at that time that she did not need any further evaluation.
 {¶ 23} Additionally, the evidence showed that appellant took steps to provide C.M. and C.W. with adequate supervision following school, by arranging with the school to have them dropped off at her mother's house. Shelton was unable to explain why the children were not given the bus passes that had been drawn up for them that would have taken them to Klump's house after school. And while there was some evidence presented that appellant suggested to C.M. that she break into the house if necessary, the evidence showed, nevertheless, that appellant did, in fact, make arrangements to have both children cared for by her mother.
 {¶ 24} Thus, unlike the situation in In re Zeiser, we are left without a clear picture of whether C.M. or C.W. are regularly subjected to inadequate parental supervision because of appellant's substance abuse issues. Cf., In re Zeiser,133 Ohio App.3d at 348. While BCDJFS presented sufficient evidence to create a disquieting suspicion that appellant's children may be neglected, it failed to present clear and convincing evidence that they are. The trial court erred by finding otherwise.
 {¶ 25} Appellant's first assignment of error is sustained.
 {¶ 26} Assignment of Error No. 2:
 {¶ 27} "The trial court erred when it found [C.M.] and [C.W.] to be dependent children without any evidence the children lacked proper care."
 {¶ 28} Appellant argues that there was insufficient evidence presented to support the trial court's finding that C.M. and C.W. are dependent children pursuant to R.C. 2151.04. We agree with this argument.
 {¶ 29} R.C. 2151.04(C) defines a dependent child to include any child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]"[1] A child is dependent if he or she is not receiving proper care and support. In re Brodbeck (1994),97 Ohio App.3d 652, 658. This determination must be based on the child and his or her environment and conditions, rather than the parent's deficiencies. Id.
 {¶ 30} BCDJFS essentially argues that the children are dependent for the same reasons it alleged they are neglected, i.e., appellant's behavior on the field trip and her substance abuse problem. However, we must reject this argument for the same reasons set forth in our response to appellant's first assignment of error. BCDJFS failed to set forth clear and convincing evidence that the children were dependent pursuant to R.C.2151.04, and the trial court erred by determining otherwise.
 {¶ 31} Appellant's second assignment of error is sustained.
 {¶ 32} Assignment of Error No. 3:
 {¶ 33} "The trial court erred when it found [C.W.] to be a neglected or a dependent child since no evidence was offered as to her condition."
 {¶ 34} Appellant argues that the trial court erred in adjudging C.W. neglected and dependent, because BCDJFS failed to present any evidence — let alone clear and convincing evidence — that C.W. was either neglected under R.C. 2151.03 or dependent under R.C. 2151.04. However, this assignment of error has been rendered moot by our disposition of appellant's first two assignments of error; therefore, we need not rule on it. See App.R. 12(A)(1)(c) (indicating that a court of appeals need not decide an assignment of error made moot by its ruling on another).
 {¶ 35} The trial court's judgment is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion and in accordance with law.
Young, P.J., and Walsh, J., concur.
[1] {¶ a} BCDJFS alleged that C.M. and C.W. were dependent pursuant to division (D) as well as (C) of R.C. 2151.04. R.C.2151.04(D) defines a neglected child to include any child:
{¶ b} "(D) To whom both of the following apply:
{¶ c} "(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
{¶ d} "(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household."
{¶ e} R.C. 2151.04(D) no longer has any application to this case in light of our disposition of appellant's first assignment of error in which we reversed the trial court's finding of neglect with respect to both children.