[Cite as *In re C.S.*, 2012-Ohio-2884.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: C.S.

C.A. No.     26178

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 11-05-00326

DECISION AND JOURNAL ENTRY

Dated: June 27, 2012

BELFANCE, Judge.

{¶1}    Appellant Jennifer Self ("Mother") appeals from the judgment of the Juvenile Division of the Summit County Court of Common Pleas, overruling Mother's objections and adjudicating Mother's child, C.S., abused, neglected, and dependent. For the reasons set forth below, we affirm in part and reverse in part.

I.

{¶2}    Mother is the natural mother of C.S., born April 6, 2008, and, prior to the proceedings, C.S. resided with her. Father was involved in the proceedings below, but is not a party to this appeal.

{¶3}    C.S. was admitted to the hospital on March 31, 2011. In May 2011, a complaint was filed in the Juvenile Division of the Summit County Court of Common Pleas alleging that C.S. was abused pursuant to R.C. 2151.031(B), (C), and (D), neglected pursuant to R.C. 2151.03(A)(2) and (3), and dependent pursuant to R.C. 2151.04(B) and (C). The trial court

granted emergency custody to the maternal aunt and uncle. A magistrate held a hearing and issued a decision concluding that C.S. was abused pursuant to R.C. 2151.031(B), neglected pursuant to R.C. 2151.03(A)(2), and dependent pursuant to R.C. 2151.04(B) and (C). The magistrate found that the allegations alleging abuse under R.C. 2151.031(C) and (D) and neglect under R.C. 2151.03(A)(3) were not substantiated by clear and convincing evidence and overruled them. That same day the trial court adopted the magistrate's decision and entered judgment. Mother filed objections. Thereafter, the magistrate entered a decision placing C.S. in the temporary custody of the maternal aunt and uncle. The trial court adopted the decision and entered judgment accordingly that same day. Subsequently, the trial court entered a decision overruling Mother's objections and adjudicating C.S. abused, neglected, and dependent. Mother has appealed, raising three assignments of error for our review.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT IMPROPERLY FOUND THE CHILD TO BE DEPENDENT AS THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT IMPROPERLY FOUND THE CHILD TO BE NEGLECTED AS THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT IMPROPERLY FOUND THE CHILD TO BE ABUSED AS THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶4} Mother asserts in her assignments of error that the trial court's findings that C.S. was dependent, neglected, and abused are against the manifest weight of the evidence.

{**¶5**}  In deciding whether a trial court's adjudication of a child as abused, neglected, or dependent is against the manifest weight of the evidence,

> this court [reviews] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [adjudication] must be reversed[.]

(Internal quotations and citations omitted.)  *In re A.W.*, 9th Dist. No. 25601, 2011-Ohio-4490, ¶ 8.  "[A]n adjudication of abuse, neglect, or dependency must be established by clear and convincing evidence[,]" which requires "evidence that will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established."  *Id.* at ¶ 9.

{**¶6**}  The trial court concluded that C.S. was dependent pursuant to R.C. 2151.04(B) and (C), neglected pursuant to R.C. 2151.03(A)(2), and abused pursuant to R.C. 2151.031(B). "Although the trial court found alternate grounds for its adjudication of * * * dependency under R.C. 2151.04, it was not necessary that it find more than one statutory basis for each adjudication."  *In re D.H.*, 9th Dist. No. 24879, 2010-Ohio-422, ¶ 6.  "Because either of the two designated subsections under * * * R.C. 2151.04 would have supported the trial court's adjudications of * * * dependency, this Court will confine its review to the trial court's adjudication of * * * dependency under R.C. 2151.04(C)."  *Id.*

{**¶7**}  The trial court's adjudication stems from an incident in March 2011.  On March 31, 2011, C.S. was brought to the hospital, after Mother called 911 when she awoke to find C.S. vomiting.  The intake caseworker for Summit County Children Services, Sarah-Maria Riffle, testified that Mother told her that there was a man who came over and brought her marijuana in a McDonald's bag and that he may have brought her OxyContin as well and that could have been how C.S. got OxyContin.  Mother told Ms. Riffle that Mother did not keep OxyContin in the

house. Ms. Riffle averred that Mother reported that she and C.S. had been napping on the couch. When Mother woke up, she observed that C.S. "had been vomiting, his eyes had been rolling back in his head * * *." Mother "found a baggie with some pills in it on the floor." Mother called 911 and provided the pills to the assigned detective or EMS. Ms. Riffle testified that Mother reported that she had smoked marijuana that day and had done so on a daily basis but denied using marijuana in front of C.S. In addition, Mother admitted to consuming a six-pack of beer every other day. There were no other adults in the home at the time of the incident. Another caseworker testified similarly and stated that Mother identified the pills found in the home as OxyContin. Mother did not provide any other explanation for C.S.' illness.

{¶8} Detective Linda Rinear testified to a similar series of events. She testified that Mother told her that, on the morning of March 31, 2011, C.S. fell asleep on the couch with Mother. Around 11:00 A.M. Mother woke up and gave C.S. breakfast. At that time, Mother found an empty, torn baggie on the floor, which she stated was the type of baggie in which drugs were brought into her house. After breakfast, they went back to bed. Around 3 or 3:30 P.M., Mother awoke to find C.S. in respiratory distress. Detective Rinear stated that EMS found an OxyContin pill on the floor. In addition, Detective Rinear testified that police found a cereal bar on the coffee table in the room where C.S. had been napping. When police asked Mother about it, she indicated that it had marijuana in it and that her drug dealer delivered them. Police thereafter arrested Mother on charges of endangering children.

{¶9} C.S. was placed with his maternal aunt and uncle. There was testimony that Mother was compliant with the safety plan and the no-contact order once she was aware it was in place and prevented her from seeing C.S. In addition, Mother was connected with a substance abuse program to address her addictions.

**Dependency**

{¶10} A dependent child includes "any child[] * * * [w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" R.C. 2151.04(C).

{¶11} We conclude that the trial court's conclusion that C.S. was dependent pursuant to R.C. 2151.04(C) is not against the manifest weight of the evidence. To establish dependency under R.C. 2151.04(C), evidence must be presented "of conditions or environmental elements that were adverse to the normal development of the child[]." *In re A.C., C.C., and C.S.,* 9th Dist. Nos. 03CA0053, 03CA0054, 03CA0055, 2004-Ohio-3248, ¶ 14. "A finding of dependency under R.C. 2151.04(C) focuses on the condition of the child[']s home and whether [he or she] [is] receiving proper care and support." *Id.* at ¶ 12. We have stated that "[a] dependency finding based on a parent's use of an illegal substance or the abuse of a legal substance under either R.C. 2151.04(B) or (C) requires some evidence that [the parent's] supervision of her children or the environment of her children has been affected in some negative way by the behavior of the parent." (Internal quotations and citations omitted.) *In re O.H.*, 9th Dist. No. 25761, 2011-Ohio-5632, ¶ 9; *see also In re D.H., A.H., S.B., D.Q.,* 9th Dist. No. 25095, 2010-Ohio-2998, ¶ 13.

{¶12} Mother correctly points out that evidence was not presented establishing that C.S. actually ingested OxyContin or that that was the reason he was hospitalized. No medical records or related testimony was presented at the hearing. However, we note that the magistrate was cognizant of this and concluded that it was not established by clear and convincing evidence that C.S. had "ingested Oxycontin [or] that the Oxycontin caused harm to the child."

{¶13} In the instant matter, there was testimony that on March 31, 2011, C.S. lived in an environment in which drugs were present and in forms that would be appealing to a young child,

i.e. in a McDonald's bag and/or in a cereal bar. Moreover, there was testimony that Mother left C.S., who was not yet three years old, unattended in the presence of these drugs while she slept. Notably, not only were drugs present in the home, they were accessible to a toddler; the detective found a marijuana-laced cereal bar on the coffee table in the room where C.S. was napping and pills that Mother identified as OxyContin, were found on the floor in that same room. While it is true that the testimony supports that C.S. was also sleeping at the time, Mother awoke to find C.S. ill and requiring immediate medical attention. In addition, there was testimony that Mother believed C.S. had gained access to OxyContin. We cannot say the trial court's find of dependency pursuant to R.C. 2151.04(C) is against the manifest weight of the evidence. Accordingly, we overrule Mother's first assignment of error.

**Neglect**

{¶14} R.C. 2151.03(A)(2) states that a neglected child includes a child "[w]ho lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian[.]" "'Adequate parental care' means the provision by a child's parent or parents, guardian, or custodian of adequate food, clothing, and shelter to ensure the child's health and physical safety and the provision by a child's parent or parents of specialized services warranted by the child's physical or mental needs." R.C. 2151.011(B)(1).

{¶15} In the instant matter, there was no testimony that C.S.' home, food, or clothing was inadequate. There was no testimony that the home was unsanitary, that C.S. was malnourished, or that his clothing was ill-fitting or inappropriate. Nor was there any testimony that C.S. had any special medical needs that were not being met by Mother. Accordingly, the finding that C.S. was neglected as that term has been defined by R.C. 2151.03(A)(2) and 2151.011(B)(1) is against the manifest weight of the evidence. Even if we were to agree with

courts that have concluded that lack of parental supervision can constitute neglect under R.C. 2151.03(A)(2), there was no testimony evidencing that Mother frequently left C.S. unsupervised, a factor that such Courts have found important in making a finding of neglect based upon lack of supervision. *See In re Zeiser,* 133 Ohio App.3d 338, 340, 347-348 (11th Dist.1999). Thus, we sustain Mother's second assignment of error.

**Abuse**

{¶16} Pursuant to R.C. 2151.031(B), an abused child includes a child who "[i]s endangered as defined in section 2919.22 of the Revised Code, except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child[.]" R.C. 2919.22(A) provides that "[n]o person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." Based upon similar reasoning to that discussed above, we likewise conclude the trial court's finding of abuse was not against the manifest weight of the evidence. After using marijuana, Mother fell asleep on the couch with C.S., while drugs were present and within reach of C.S. The drugs included marijuana in a McDonald's bag, a cereal bar containing marijuana, and a bag containing pills, which possibly were OxyContin. Given Mother's lack of supervision, there was nothing which prevented C.S, who was not yet three years old at the time, from ingesting the drugs. There was clear and convincing evidence that Mother's actions and/or inactions created a substantial risk to C.S.' health and safety. *See In re Philips,* 9th Dist. No. 1740, 1989 WL 24244, *2 (Mar. 15, 1989). Thus, the trial court's determination was not against the manifest weight of the evidence. We overrule Mother's third assignment of error.

III.

**{¶17}** In light of the foregoing, we overrule Mother's first and third assignments of error and sustain her second assignment of error. The Summit County Court of Common Pleas, Juvenile Division's adjudication of neglect is reversed and its adjudications of dependency and abuse are affirmed.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

EVE V. BELFANCE
FOR THE COURT

MOORE, P. J.
CONCURRING.

{¶18} I concur in most of the majority opinion. I write separately with respect to the discussion regarding the finding of neglect in the second assignment of error. While I am not persuaded to follow the Twelfth District's decision (*In re Zeiser*) in extending the definition of providing "shelter" to children that are frequently left unsupervised (R.C. 2151.03(A)(2), R.C. 2151.011(B)(1)), the record below demonstrates that under the unique facts of this case, Mother's conduct in "dozing" while the drug dealer delivered drugs and left them in the presence of her two-year-old child is the functional equivalent of leaving the child unsupervised. Nonetheless, because I believe the legislature envisioned a more traditional definition of "shelter," as evidenced by the other necessities with which it was grouped ("adequate food, clothing and shelter"), I concur in the judgment of the court to sustain Mother's second assignment of error.

CARR, J.
CONCURRING IN PART, DISSENTING IN PART.

{¶19} Although I concur in the majority's judgment as it relates to the issues of dependency and abuse, I dissent from the majority's conclusion that the evidence did not support a finding of neglect. I disagree with the reasoning of the majority in regard to its narrow interpretation of the term "adequate parental care."

{¶20} R.C. 2151.03(A)(2) defines "neglected child" as one "[w]ho lacks adequate parental care because of the faults or habits of the child's parents[.]" R.C. 2151.011(B)(1) defines "adequate parental care" as "the provision by a child's parent * * * of adequate food, clothing, and shelter to ensure the child's health and physical safety * * *." R.C. 2151.011(B)(53) defines "shelter" solely as "the temporary care of children in physically

unrestricted facilities pending court adjudication or disposition." Clearly, that definition serves as a term of art which makes no sense within the context of the definition of "adequate parental care." Because the legislature chose not to define "shelter" as that term is relevant to the definition of "adequate parental care," courts must apply a common sense, common language definition. This is the approach adopted in other district courts. *See, e.g., In re Zeiser*, 133 Ohio App.3d 338, 340 (11th Dist.1999), and *In re C.M.*, 12th Dist. Nos. CA2003-02-003 and CA2003-02-004, 2004-Ohio-2294, ¶ 16.

{¶21} "Shelter" is defined as "something that covers or affords protection." *Merriam-Webster's Collegiate Dictionary* 1147 (11th Ed.2004). The *Zeiser* and *C.M.* courts construed "shelter" in this context as a requirement for appropriate parental supervision. This is a common sense approach read in conjunction with the statute's requirement of adequate food, clothing, and shelter for the express purpose of "ensur[ing] the child's health and physical safety." It is a parent's duty to protect, or "shelter," a child from harm, recognizing that harm may befall the child although the child is within the walls of the "shelter" of the physical home.

{¶22} In this case, there was clear and convincing evidence that Mother, through her faults and habits, failed to provide adequate care to the child as I would construe that term. Mother arose at some time in the morning of March 31, 2011, although not for a significant amount of time to have fed the child breakfast. She admitted that she and the child napped on the couch until 11:00 a.m., at which time she got up and fed the child breakfast. After breakfast, they both went back to bed. Mother admitted to having smoked marijuana that morning, although it is unclear whether she did so before or after feeding the child. She further admitted to smoking marijuana on a daily basis and to having a drug dealer who made home deliveries. Not only did Mother not take any precautions to ensure that her drugs were not accessible to her

young child, she requested some drugs in a form that would entice a child to ingest them. Mother had THC delivered in cereal bars which looked like the cereal in the child's bowl. Moreover, the drug-laced bar was on a low table next to where Mother dozed as the child played. Whether Mother ordered delivery of Oxycontin or not, her supplier nevertheless left pills in or near a McDonald's bag on the floor where the child could find and access them. As the child struggled to breathe as his eyes rolled back in his head, Mother saw the torn plastic bag of pills on the floor and gave them to medical personnel to enable them to appropriately treat the child.

{¶23} The evidence supported a finding that Mother's habitual drug use prevented her from protecting the child's health and physical safety. She used marijuana in the morning and slept the day away, leaving C.S. unattended in an environment rife with access to drugs. Her faults and habits prevented her from rendering adequate parental care to the child. I do not believe the legislature, in defining "adequate parental care," intended to hamstring the courts by disallowing a construction of that term that would prevent a finding of neglect under the egregious circumstances of this case. I would affirm in full the judgment of the juvenile court.

APPEARANCES:

DENISE E. FERGUSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.