[Cite as *In re J.R.*, 2019-Ohio-1151.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: J.R.

C.A. No.     29086

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 17-09-0752

DECISION AND JOURNAL ENTRY

Dated: March 29, 2019

HENSAL, Judge.

{¶1}    Appellant Father appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated his child dependent.  This Court affirms.

I.

{¶2}    Father and Mother are the biological parents of J.R. (d.o.b. 4/13/14).  After J.R. was born with opiates in his system, Summit County Children Services Board ("CSB" or "the agency") filed a complaint alleging that the child was abused and dependent.  J.R. was adjudicated an abused and dependent child in case number DN 14-05-293.  He was reunified with his parents in August 2015.  The agency filed two additional cases in late 2016 and early 2017, both of which were later dismissed.

{¶3}    In late June 2017, the Akron Police Department received a request to conduct a welfare check of the child at Mother's home.  Based on the officer's observations of the conditions in the home, he took J.R. into custody pursuant to Juvenile Rule 6.  CSB requested

and obtained an emergency order of temporary custody of the child to his maternal uncle under the protective supervision of the agency. CSB filed a complaint but dismissed it when the matter could not be heard for adjudication and initial disposition within the required statutory time period.

{¶4} CSB refiled its complaint, alleging that J.R. was a neglected and dependent child. The agency obtained a second ex parte emergency order placing the child with his maternal uncle under CSB's protective supervision. At the shelter care hearing, Mother and Father stipulated that there was probable cause for the removal of the child and agreed to emergency temporary custody to a relative with protective supervision by CSB. Both parents were granted supervised visitation.

{¶5} On the first day of the adjudicatory hearing, Father objected to the admission of testimony by the child's physician on the basis of physician-patient privilege. The magistrate ordered the parties to brief the issue of whether testimony by the child's physician was privileged communication that was inadmissible. Father and CSB filed their respective briefs. The magistrate issued an order overruling Father's objection to the admission of J.R.'s physician's testimony. No party filed a motion to set aside the magistrate's order.

{¶6} The magistrate heard additional evidence on the second day of the adjudicatory hearing. The matter thereafter proceeded immediately to disposition. Subsequently, the magistrate issued a decision again noting Father's objection to the physician's testimony and stating that the testimony was admissible for purposes of adjudication. The magistrate dismissed both allegations of neglect and one of two allegations of dependency, but found J.R. to be a dependent child as to the remaining dependency allegation pursuant to Revised Code Section 2151.04(C). In addition, the magistrate placed J.R. in the temporary custody of the maternal

uncle under the protective supervision of CSB, adopted the case plan as the order of the court, and found that the agency had made reasonable efforts to prevent the continued removal of the child from his home. Father and Mother were granted supervised visitation. The juvenile court adopted the magistrate's decision the same day.

{¶7} Father and Mother filed their respective objections and briefs in support. CSB responded in opposition. While the objections were pending, a maternal cousin filed a motion for legal custody of J.R. CSB also filed a motion to modify the disposition to temporary custody of the maternal cousin under protective supervision of the agency. Father and Mother agreed to an interim order placing J.R. in the temporary custody of the maternal cousin under CSB's protective supervision pending resolution of the objections.

{¶8} The juvenile court issued a judgment in which it overruled Father's and Mother's objections, adjudicated J.R. a dependent child pursuant to Revised Code Section 2151.04(C), placed the child in the temporary custody of the maternal uncle under CSB's protective supervision, and adopted the case plan as the order of the court. In addition, the juvenile court concluded that Father had no standing to assert the physician-patient privilege on behalf of the child and, therefore, considered the testimony of J.R.'s physician with regard to the child's adjudication. The juvenile court found that the magistrate had made a reasonable efforts determination and made its own supported finding of reasonable efforts. Father filed a timely appeal in which he raises three assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT THE BIOLOGICAL PARENTS LACKED STANDING TO ASSERT THE PHYSICIAN-PATIENT PRIVILEGE UNDER [REVISED CODE

SECTION] 2317.02(B)(1) ON BEHALF OF THEIR CHILD AT THE ADJUDICATORY HEARING.

{¶9}   Father argues that the juvenile court erred when it concluded that parents lack standing to assert the physician-patient privilege on behalf of their child at an adjudicatory hearing.   Because Father has not shown how he was prejudiced by the admission of the physician's testimony, any error by the juvenile court was harmless.

{¶10}   In this case, Father objected to the admission of testimony by the child's pediatric nephrologist at the adjudicatory hearing.  The juvenile court summarily rejected his challenge for lack of standing.  Assuming, without deciding, that the trial court erred by concluding that Father did not have standing to challenge the admissibility of the physician's testimony, the court's ruling constituted harmless error.

{¶11}   The physician's testimony was not considered to prove that J.R. had been abused or neglected.  Rather, the testimony provided context for the circumstances and special needs of the child, relevant to his condition and environment.  In that regard, Father himself admitted to the agency caseworker that he understood the severity of the child's diagnosis.  In fact, Father admitted that the gravity of J.R.'s medical condition and the intricacies of his treatment were so overwhelming that Father fled and sought refuge in drugs like heroin and methamphetamine.  In addition, the caseworker testified that Mother discussed the child's medical diagnosis and required care with her in great detail.  Mother's sister testified at the adjudicatory hearing and also described the child's serious medical condition and detailed treatments and disease management.  There was no objection to any such lay testimony.

{¶12}   The physician's testimony relating to the child's medical condition and treatments was merely cumulative of evidence adduced from other witnesses' testimony.  Accordingly, Father has not demonstrated how he was prejudiced by the admission of the physician's

testimony. Any error in the admission of the physician's testimony was, therefore, harmless. Father's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FOUND THE CHILD TO BE A DEPENDENT CHILD PURSUANT TO [REVISED CODE SECTION] 2151.04(C), AS THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} Father argues that the juvenile court's finding that J.R. was a dependent child is against the manifest weight of the evidence. This Court disagrees.

{¶14} Juvenile abuse, neglect, and dependency cases are initiated by the filing of a complaint. *See* Juv.R. 22(A); Juv.R. 10; R.C. 2151.27(A). The complaint is "the legal document that sets forth the allegations that form the basis for juvenile court jurisdiction." Juv.R. 2(F). The juvenile court must base its adjudication on the evidence adduced at the adjudicatory hearing to support the allegations in the complaint. *See In re Hunt*, 46 Ohio St.2d 378, 380 (1976). If allegations in the complaint are not proved by clear and convincing evidence at the adjudicatory hearing, the juvenile court must dismiss the complaint. Juv.R. 29(F); R.C. 2151.35(A)(1). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶15} This Court reviews as follows:

In determining whether the juvenile court's adjudication of dependency is against the manifest weight of the evidence, this court [reviews] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [adjudication] must be reversed[.]

(Alterations sic.) *In re R.L.*, 9th Dist. Summit No. 28387, 2017-Ohio-4271, ¶ 8, quoting *In re C.S.*, 9th Dist. Summit No. 26178, 2012-Ohio-2884, ¶ 5, quoting *In re A.W.*, 195 Ohio App.3d 379, 2011-Ohio-4490, ¶ 8 (9th Dist.).

{¶16} Father challenges the finding that J.R. is dependent pursuant to Revised Code Section 2151.04(C), which defines a "dependent child" as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" The crucial subsection (C) inquiry is whether there is evidence "of conditions or environmental elements that were adverse to the normal development of the child." (Internal quotations omitted.) *In re I.T.*, 9th Dist. Summit Nos. 27513, 27560, and 27581, 2016-Ohio-555, ¶ 32, quoting *In re C.S.*, 9th Dist. Summit No. 26178, 2012-Ohio-2884, ¶ 11, quoting *In re A.C.*, 9th Dist. Wayne Nos. 03CA0053, 03CA0054, and 03CA0055, 2004-Ohio-3248, ¶ 14. In addition,

> [a] dependency finding under [Revised Code Section] 2151.04(C) does not require specific parental fault; rather the focus is on the child's situation to determine whether the child is without proper or adequate care or support. *In re R.P.*, 9th Dist. Summit No. 26836, 2013-Ohio-5728, ¶ 19. "The conduct of the parent is relevant only insofar as it forms a part of the child[ ]'s environment and it is significant only if it has a detrimental impact on [him]." *In re A.C.* at ¶ 14, citing *In re Burrell*, 58 Ohio St.2d 37, 39 (1979). This Court has held that a parent's mental health is directly related to a child's environment and may properly be considered in determining whether state intervention is thereby warranted. *In re J.C.*, 9th Dist. Summit Nos. 26229 and 26233, 2012-Ohio-3144, ¶ 21.

*In re I.T.* at ¶ 32.

{¶17} In this case, the clear and convincing evidence established that J.R.'s condition or environment warranted the state to assume his guardianship in the child's best interest, at the time the agency filed its complaint. Father asserts that the juvenile court was only permitted to consider evidence regarding allegations in the prior complaint filed in late June 2017, in case

number DN 17-06-491. CSB dismissed that complaint due to statutory time constraints. The agency could have decided not to re-file its complaint. However, based on the evolution of circumstances in the interim, CSB filed the instant complaint on September 26, 2017, in which it alleged additional concerns. As that was the complaint before the juvenile court, it properly considered evidence regarding allegations up to that date.

{¶18} In late June 2017, the Akron Police Department received a call to conduct a welfare check on J.R. in the home where he and Mother were living. Officer Jason Beck arrived to observe Father bathing the child and preparing chicken nuggets. The home was somewhat messy, but the officer was particularly concerned about a bottle of household cleaner on the bathroom floor which would have been accessible to the three-year old child, as well as uncapped syringes on a table. Although the syringes were for medical use, rather than illicit drug use, the officer was concerned that they posed a safety concern for a young child who could be punctured and exposed to contamination. During the officer's safety assessment, Father disclosed that he was homeless and staying in a shelter, and that Mother was then in jail. Because of the perceived physical hazards in the home, as well as uncertainty as to whether Father was lawfully in the home, the officer took J.R. into custody pursuant to Juvenile Rule 6.

{¶19} CSB has been involved with Mother and Father on multiple prior occasions based on concerns for the parents' drug use, particularly relating to heroin, as well as mental health concerns based on erratic behavior by Mother. At the team decision meeting after the child's removal by police, Father made admissions that caused concerns regarding the child's environment. Father admitted that he had just been released from jail four days prior to the police officer's welfare check on charges involving possession of heroin and aggravated possession of drugs. Father admitted that he was a frequent heroin user for over five years and

that he had a history involving other drugs including methamphetamine as well. In fact, J.R. was initially removed from his parents' care after being born addicted to opiates during a time when both Mother and Father were using heroin. Father admitted a history of drug relapses, most significantly in September 2016, when he first learned of J.R.'s diagnosis of nephrotic kidney disease. Due to the stress of the child's diagnosis, Father admitted running off and using drugs from September 2016 until he was arrested in April 2017.

{¶20} As the caseworker maintained contact with the family after the child's June 2017 removal, she became concerned regarding "[u]ncharacteristic" behavior by Mother, who laughed as she explained a fascination with a home where Mother continued to trespass. For example, Mother was compelled by the home's unique doorbell to ring it repeatedly and driven to jump a fence to sit on the patio furniture in the backyard. The caseworker was unsure whether Mother was behaving oddly because of drug use, mental health issues, or both. Mother's sister and uncle verified additional instances of Mother's unusual behavior. Both recounted Mother's assertions to them that a doctor had become obsessed with Mother, was stalking her, and leaving messages for her on blimps and busses, while strangers lined the streets cheering for Mother to be with the doctor. Mother's sister testified that Mother pointed out a house that she claimed the doctor purchased for her to live in with him after he divorced his wife. Mother's sister learned that Mother's claims were not true. The caseworker's concern about Mother's erratic behavior was that it was putting her at risk of not being able to care for J.R. because of the possibility of arrest. In fact, there were warrants out for Mother as of September 2017, based on her trespassing at the property.

{¶21} Father accompanied Mother during her late-night criminal trespasses and was thereafter arrested in mid-July 2017, on a probation violation. Father remained in jail until

August 21, 2017, when he was transferred to Community Based Correctional Facility ("CBCF") for 30-90 days. Father admitted to the caseworker that he had many rule violations at CBCF for insubordination, being late for classes, making crude jokes to staff, and pretending to shoot up drugs.

{¶22} Father further admitted to the caseworker that he overdosed earlier in July 2017, stating, "My son wasn't with me, so F it." The caseworker characterized Father's behavior as "reckless" when, instead of making an effort to act responsibly to regain custody of his child who had significant medical needs, Father was facing jail time for engaging in criminal mischief and acting in a cavalier manner regarding drug use.

{¶23} Both Mother and Father still lacked stable housing at the time of the adjudicatory hearing. Mother informed the caseworker that she had been evicted in early September 2017. Although she was staying with her mother as a guest in an assisted living facility, those accommodations would not be suitable for a child and would not be a long-term solution for Mother. Father was homeless when the child was initially removed. He shortly thereafter returned to jail and was in CBCF at the time the complaint was filed.

{¶24} Mother discussed J.R.'s medical diagnosis and treatments with the caseworker. The child requires medications and periodic infusions for his nephrotic kidney disease. Father also discussed the child's diagnosis with the caseworker. In addition to kidney disease, the child has blood pressure, heart, and thyroid issues. The child requires medications, a low sodium diet, and limited fluid intake. Upon J.R.'s removal from Father's care, the child was immediately admitted to the hospital for health complications. Although the child needed weekly transfusions prior to his removal, since his placement with relatives, J.R. has not required any hospital

admissions for transfusions. Moreover, since his removal, the child has gone into partial remission of his kidney disease.

**{¶25}** Based on a review of the evidence, this is not the exceptional case where the finder of fact clearly lost its way and created a manifest miscarriage of justice in adjudicating J.R. a dependent child. J.R. requires consistent attention to his medical and dietary needs due to his severe kidney disease. At three years old, the child was too young to self-protect or ensure that his health needs were being met. Neither Mother nor Father had stable housing where the child could safely reside. Both parents spent time in jail and/or another secured facility once CSB became involved. Both parents continued to engage in reckless and/or erratic behaviors which put their abilities to be present to care for the child at risk. Mother continued to have active warrants when the complaint was filed. She expressed delusional thoughts to multiple people and acted on her delusional thoughts in a criminal manner. Long-term substance abuse was a problem for both parents. In fact, Father turned to drugs to cope with J.R.'s diagnosis, and again after the child's removal, at that time overdosing at work. Neither parent would be able to provide the necessary supervision and care for the child while incarcerated or high on drugs. The totality of the circumstances, including the parents' housing instability, utilization of illicit drugs as a coping mechanism, and erratic and reckless behaviors, demonstrates that J.R.'s home environment created a substantial risk to his health and well-being. Accordingly, the clear and convincing evidence established that J.R.'s condition and environment warranted the state, in the interests of the child, in assuming his guardianship. For the foregoing reasons, the juvenile court's adjudication of J.R. as a dependent child was not against the manifest weight of the evidence. Father's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN FINDING THAT CHILDREN SERVICES MADE REASONABLE EFFORTS AT THE ADJUDICATORY HEARING.

{¶26} Father argues that the juvenile court erred by finding at the adjudicatory hearing that CSB had made reasonable efforts to prevent the removal of J.R. from his home. This Court disagrees.

{¶27} The magistrate made a finding, based on specific enumerated facts, that CSB made reasonable efforts to prevent the continued removal of the child from his home. Although Father initially objected to the magistrate's finding of reasonable efforts without analysis, he abandoned that argument in his objections brief and argued that the magistrate had failed to make a reasonable efforts finding. "An objection to a magistrate's decision must be 'specific and state with particularity all grounds for objection.'" *In re B.P.*, 9th Dist. Summit Nos. 27541 and 27542, 2015-Ohio-4352, ¶ 15, quoting Juv.R. 40(D)(3)(b)(ii). Because Father failed to argue in his objections that the evidence did not support a finding that CSB had used reasonable efforts, he has forfeited that issue on appeal. In the absence of a proper objection, Father is limited to a claim of plain error. *In re B.P.* at ¶ 18, citing Juv.R. 40(D)(3)(b)(iv).

{¶28} In its final judgment, the juvenile court found:

[R]easonable efforts were made to prevent the removal of the child from the home, including holding a Team Decision Meeting, consistent attempts to communicate with mother and father, gathering collateral information from service providers and others involved with the family, developing a case plan, making referrals for services, and visiting the child in his placement. Despite these efforts, return of the child at this time is contrary to his best interest and welfare due to parents' lack of response or engagement.

{¶29} The crux of Father's argument is that the evidence adduced at the adjudicatory hearing did not support the reasonable efforts finding. Because Father forfeited a challenge to

the evidentiary finding and has not argued how the juvenile court's reasonable efforts finding prejudiced him, he has not demonstrated plain error. Father's third assignment of error is overruled.

## III.

{¶30} Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CALLAHAN, P. J.
CARR, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

AMBER CROWE, Attorney at Law, for Mother.

CHRISTINA BOLLMAN, Attorney for the CASA/Guardian ad Litem.