[Cite as *In re R.L.*, 2017-Ohio-4271.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: R.L.

C.A. No. 28387

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. DN 16-04-0313

DECISION AND JOURNAL ENTRY

Dated: June 14, 2017

---

HENSAL, Presiding Judge.

{¶1} Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated her child R.L. a dependent child. This Court affirms.

I.

{¶2} Mother is the biological mother of R.L. (d.o.b. 5/23/12).[1] She and the child lived in a home with eight or nine other people for a year or so. Mother was not on the lease. Before the incident giving rise to the allegations in this case, R.L. was being cared for by a friend of Mother for 5-6 weeks. The child was then delivered to Mother's nephew's ("Nephew") home for a few days. On April 21, 2016, Mother appeared at Nephew's home and demanded return of the child. Because of Mother's demeanor, behavior, attire, and other conditions, Nephew refused to release the child out of concern for his safety.

---

[1] Paternity was established during the course of the proceedings, but Father is not a party to this appeal.

{¶3}    The police were called to Nephew's home to address the situation.    After investigation at the scene, the police determined that there were reasonable grounds to take R.L. into custody pursuant to Juv.R. 6, in the interest of the child's welfare.    The police notified Summit County Children Services Board ("CSB"), and the agency organized a team decision meeting for the next day.    Mother and many others on her behalf attended the meeting.    Based on the agency's investigation, however, CSB filed a complaint on April 22, 2016, alleging that the child was dependent pursuant to R.C. 2151.04(A) and (C).

{¶4}    After an adjudicatory hearing, the magistrate adjudicated the child dependent pursuant to R.C. 2151.04(A), based on findings that he was homeless through no fault of his parents on the date the complaint was filed.    The magistrate further found that the evidence did not clearly and convincingly establish that the child's condition or environment was such as to warrant the state, in the interests of the child, in assuming his guardianship.    Accordingly, the magistrate dismissed the allegation of dependency pursuant to R.C. 2151.04(C).    The juvenile court adopted the magistrate's decision the same day and adjudicated R.L. a dependent child solely pursuant to R.C. 2151.04(A).

{¶5}    Mother filed timely objections to the magistrate's decision, arguing that CSB failed to present clear and convincing evidence to support an adjudication of dependency.    CSB responded in opposition, but it did not challenge the magistrate's dismissal of its claim that the child was dependent pursuant to R.C. 2151.04(C).    After a hearing,[2] the juvenile court overruled

---

[2] The judgment entry states that the "parties were present before the Court for hearing on Father's objection * * *."    The only docketed objections in the record are those of Mother.    There is no transcript of the objections hearing in the record.

Mother's objections and ordered that R.L. was a dependent child pursuant to R.C. 2151.04(A).[3]

At a subsequent dispositional hearing, the juvenile court awarded temporary custody to CSB.

Mother filed a timely appeal in which she raises one assignment of error for review. She further

obtained a stay pending this appeal.

## II.

### ASSIGNMENT OF ERROR

THE TRIAL COURT'S JUDGMENT FINDING THE MINOR CHILD
DEPENDENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶6}     Mother argues that the juvenile court's finding that R.L. was dependent on April

22, 2016, is against the manifest weight of the evidence. This Court disagrees.

{¶7}     As a preliminary matter, although Mother did not raise the issue that the juvenile

court failed to comply with R.C. 2151.28(L) to make findings of fact and conclusions of law to

support its adjudication of dependency, we note that the trial court indeed made such findings.

{¶8}     In determining whether the juvenile court's adjudication of dependency is against

the manifest weight of the evidence,

> this court [reviews] the entire record, weighs the evidence and all reasonable
> inferences, considers the credibility of witnesses and determines whether in
> resolving conflicts in the evidence, the [trier of fact] clearly lost its way and
> created such a manifest miscarriage of justice that the [adjudication] must be
> reversed[.]

---

[3] Prior to the order of adjudication, the judgment entry reads: "Based upon the foregoing
analysis, the Court finds that it is in the best interest of the Child that she be placed in the
temporary custody of SCCS with the parties continuing to adhere to the times set forth in the
parenting agreement." There was no evidence presented at the hearing regarding disposition or
any parenting agreement. This Court presumes that the inclusion of that finding was the result
of a clerical error, but only because it addresses an issue that was not before the lower court for
consideration and, moreover, addresses the child by a different gender.

*In re C.S.*, 9th Dist. Summit No. 26178, 2012-Ohio-2884, ¶ 5, quoting *In re A.W.*, 9th Dist. Summit No. 25601, 2011-Ohio-4490, ¶ 8.

{¶9} An adjudication of dependency must be supported by clear and convincing evidence, which requires "evidence that will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re A.W.* at ¶ 9; *see also* Juv.R. 29(E)(4) and R.C. 2151.35(A)(1).

{¶10} R.C. 2151.04(A) provides that a "dependent child" is any child "[w]ho is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian[.]"

{¶11} Mother argues that CSB must prove that the child was dependent as of the date alleged in the complaint, rather than as of the date of the adjudicatory hearing. Mother is correct that this Court has not yet taken a definitive stance on the issue. In *In re D.B.*, 9th Dist. Medina Nos. 03CA0015-M, 03CA0018-M, 2003-Ohio-4526, this Court concluded that a father had failed to demonstrate that the juvenile court erred by relying on evidence of events that occurred after the date the agency filed its complaint. *Id.* at ¶ 19. However, in that case, the child had been removed immediately after birth, prior to having ever resided in the parents' home, on the basis of R.C. 2151.04(C) and (D), both of which implicate the child's general conditions and environment within the household, i.e., ongoing status premised in large part on the family's history with the agency. We reasoned that the state need not wait until after a newborn child is harmed to act, so that a prospective finding of dependency is not inappropriate to protect such a child from the likelihood of abuse in that home environment. *Id.* at ¶ 16-19. This Court did not, however, hold that the agency may always rely on evidence of events that occurred after the filing of the complaint to establish the allegations in its complaint. Rather, we clarified years

later that in *In re D.B.* "we simply found that evidence occurring after the date in the complaint was not necessarily inadmissible." *In re J.A.*, 9th Dist. Summit No. 24332, 2009-Ohio-589, ¶ 10.

{¶12} In *In re J.A.*, a mother challenged the juvenile court's purported refusal to consider whether her children were dependent at the time of the adjudicatory hearing. This Court "[a]ssum[ed] without deciding that the evidence of [the mother's] actions after the date of the complaint was admissible," and found the mother's argument not well taken, because the juvenile court had in fact considered such evidence. *Id.* at ¶ 11. In that case, too, the children were alleged to be dependent pursuant to R.C. 2151.04(C), based on their general conditions and environment.

{¶13} A concurring opinion in that case relied on the plain language of R.C. 2151.23(A)(1), and concluded that the determination of whether a child is dependent, neglected, or abused is limited to evidence of circumstances as they existed "on or about the date specified in the complaint[.]" *In re J.A.*, 2009-Ohio-589, at ¶ 40 (Carr, P.J., concurring), quoting R.C. 2151.23(A)(1). This interpretation has been recognized and adopted by other appellate districts. *In re D.J.*, 3d Dist. Union Nos. 14-14-09, 14-14-10, 2014-Ohio-5204, ¶ 20, citing R.C. 2151.23(A)(1) legislatively overruling *In re Kronjaeger*, 166 Ohio St. 172 (1957) (which held that the adjudicatory determination must be based on facts as of the time of the hearing); *see also In re Alexander C.*, 164 Ohio App.3d 540, 2005-Ohio-6134, ¶ 8 (6th Dist.); *In re Rowland*, 2d Dist. Montgomery No. 18429, 2001 WL 109182, *2 (Feb. 9, 2001); *In re Sims*, 13 Ohio App.3d 37, 43 (12th Dist.1983). At this time, we agree that the determination whether a child is dependent, neglected, or abused must be made based on evidence of facts as they existed at the

time alleged in the complaint. In this case, R.L. was alleged to be dependent based on homelessness on April 22, 2016.

{¶14} The evidence presented at the adjudicatory hearing demonstrated the following. In November 2015, Nephew sublet a house he had been renting on West Exchange Street, in Akron, Ohio, to his mother (Mother's sister) and another woman named Cat. At least nine people, including Mother, were living throughout the house, including in the unfinished basement and attic. After December 2015, no one paid the rent due for the house. Because there were several young children living in the house, Nephew continued paying for the utilities until March 2016, when all utilities were turned off. Around that time, Mother executed a document purporting to give emergency temporary custody of R.L. to her sister, who passed the child to a family friend. R.L. resided with that family friend for approximately five weeks before Mother's sister took him to Nephew's home around April 19. The child arrived with one change of clothes, and no plan for how long he would be staying with Nephew. At that time, based on his relationship with his former landlord, Nephew was aware that eviction proceedings had been initiated on the West Exchange Street house.

{¶15} On April 21, 2016, Mother arrived at Nephew's house. It was a chilly, rainy day, and Mother arrived wearing no jacket or shoes. She demanded possession of R.L., but because she was behaving in an erratic and hysterical manner, Nephew refused. When Nephew asked Mother where she planned to take R.L., who also had no jacket, Mother could not articulate any plan except to "tak[e] off walking with him." Nephew testified that he believed that the child would not be safe with Mother, given that she had no place to take him and it had been raining all day.

{¶16} The police eventually arrived at the scene, having been called because of the disturbance Mother was causing. An officer testified that Mother informed him that she was being evicted from the bed bug infested home in which she had been living. She had walked to Nephew's house and attempted to call someone to pick her up. When she could not tell the officer where she planned to live and where she would be taking the child, the officer called CSB to take custody of the child.

{¶17} The CSB caseworker arrived on the scene, but Mother had left. The caseworker informed Mother's relatives who had gathered at Nephew's home that the agency would hold a team decision meeting regarding the child the following day. Mother's sister texted that information to Mother, who appeared for the meeting. During the team decision meeting on April 22, 2016, Mother informed the caseworker that she was being evicted that same day. Although Mother further stated that she had some friends and places to go, she did not indicate that she had made any definitive plans or that R.L. would be able to accompany her to any of those homes. The only friend specifically identified by Mother as a possible placement was at the team decision meeting. CSB ran a background check on her and determined that her home would not be an appropriate placement for the child, because the friend was disqualified due to a prior vehicular manslaughter charge. In addition, the agency determined that it was not appropriate for the child to live in a home with Mother's sister because of an incident involving recent drug use by Mother and her sister. Accordingly, as Mother's sister had begun living with Nephew (her son), the agency found Nephew's home to be unsuitable. Mother was not able to articulate any other options where she and the child would be able to reside as of April 22.

{¶18} Mother's boyfriend testified that he was living with Mother at the West Exchange Street house and that they were being evicted on May 3, 2016. He testified that he and Mother

had secured another apartment by that time. Nephew, however, testified that Mother's boyfriend was not one of the people living in the house he had sublet to his mother and mother's friend, so it is unclear why the boyfriend believed that Mother was authorized to remain in the house until May 3. Nephew did testify that R.L.'s father lived with Mother at the house for a period of time, but he had left before this incident arose. Mother's boyfriend is not the father of the child.

{¶19} Mother's cousin also testified on Mother's behalf. She believed that Mother was never homeless, but she based her belief on occasional visits with Mother at the West Exchange Street house, none of which occurred on April 21 or 22.

{¶20} A large portion of Mother's argument focuses on the lack of evidence to establish that Mother was homeless because there was no evidence of any forcible entry and detainer action or writ of restitution relating to the address from which Mother was being evicted. Mother has provided no legal support, and this Court has found none, for the proposition that homelessness must be premised on a showing that official legal proceedings must have occurred to have formally evicted a tenant-parent. Accordingly, this Court rejects Mother's argument that she could not have been homeless on the date alleged in the complaint, only because there was no evidence that the landlord had filed a forcible entry and detainer action and obtained a writ of restitution relating to the West Exchange Street home.

{¶21} Based on this Court's review of the record and juvenile court's finding of facts and conclusions of law, we conclude that this is not the exceptional case in which the adjudication of R.L. as a dependent child pursuant to R.C. 2151.04(A) was against the manifest weight of the evidence. Significantly, Mother believed that she no longer had a home in which to reside at the West Exchange Street address as of April 22, 2016. The evidence demonstrated that, on that date, R.L. was homeless, as Mother had neither her own home in which the child

could reside, nor had Mother made any arrangements for the child to reside in any other appropriate home. Although Mother purported to make arrangements for the child by executing a document giving emergency temporary custody of the child to her sister, the child had been passed through two other households, neither of which were arranged by Mother or determined to be appropriate. Moreover, Mother attempted to remove the child from Nephew's home, with no definite plans. Under these circumstances, the juvenile court's finding that the child was homeless on the dates alleged in the complaint was not against the manifest weight of the evidence. Accordingly, Mother's sole assignment of error is overruled.

III.

{¶22} Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

———————————————————

JENNIFER HENSAL
FOR THE COURT

SCHAFER, J.
<u>CONCURS.</u>

CARR, J.
<u>CONCURRING IN JUDGMENT ONLY.</u>

**{¶23}** I concur in judgment only. I agree that the child is dependent, but I believe that the issue in this case was the child's condition or environment which warranted the State's assumption of his guardianship in the interests of the child. *See* R.C. 2151.04(C). I recognize though that the juvenile court expressly concluded that CSB had not proven dependency based on that statutory provision, so the issue is not before us.

**{¶24}** I further agree that, when the child was taken into custody pursuant to Juv.R. 6 on April 21, 2016, he was homeless. But for CSB's having obtained an emergency order of temporary custody on April 22, however, I would not agree that the issue of the child's placement would have been within the purview of the agency that day. Accordingly, I believe that R.L. was homeless on April 22, only because of the agency's rejection of Mother's proposal that the child stay with her friend who was disqualified for placement based solely on agency policy.

APPEARANCES:

DENISE E. FERGUSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

KANDEE ROBINSON, Attorney at Law for Appellee.

LINDA SELL, Guardian ad Litem.