[Cite as *In re L.T.*, 2021-Ohio-4499.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: L.T.

C.A. No.     29987

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 20 11 0774

DECISION AND JOURNAL ENTRY

Dated: December 22, 2021

CALLAHAN, Judge.

{¶1} Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated her child dependent. This Court affirms.

I.

{¶2} Mother is the biological mother of L.T. (d.o.b. 11/20/2020). The child's paternity has not been established. Mother is also the parent to three older children, all of whom reside with relatives outside of Mother's care.

{¶3} Summit County Children Services Board ("CSB" or the "agency") investigated a referral shortly before L.T.'s birth regarding the child's siblings. Mother was staying briefly in the maternal grandmother's ("Grandmother") home with her three children. She submitted to two oral swabs at the agency's request. Both tests were positive for methamphetamine. Grandmother required Mother to vacate Grandmother's home due to Mother's drug use. For over two weeks,

Mother's whereabouts were unknown to the agency and Mother's family until she gave birth to L.T. Mother tested positive for methamphetamine use at the child's birth.

{¶4} L.T. was born on a Friday. Although the infant was healthy enough to be released from the hospital over the weekend, CSB asked the hospital to delay the child's release so that the agency could file a complaint alleging the child's dependency and abuse in the juvenile court on Monday. The hospital agreed not to discharge the infant so that the agency could file its complaint. Although Mother was medically discharged, the hospital offered her the opportunity to remain as a guest in the hospital to care for L.T. Mother declined to stay at the hospital and failed to visit with L.T. during the child's stay.

{¶5} CSB filed a complaint in which it alleged that L.T. was an abused and dependent child. The agency filed companion cases at the same time regarding L.T.'s three siblings, although the details of those complaints are not in the record. As to L.T., CSB alleged that Mother had a long history of drug use; that she had used methamphetamine throughout her pregnancy; that she had a lengthy child welfare history in another county arising out of her substance abuse issues; that her housing situation was unstable; and that she was awaiting sentencing in another county on multiple felony drug-related charges, including two felonies of the third degree. The agency requested an emergency order of temporary custody of L.T., while it requested temporary custody of the three siblings to Grandmother and the maternal great grandmother under the agency's protective supervision.

{¶6} At the shelter care hearing for L.T., Mother appeared with counsel and stipulated to findings of probable cause for the child's removal and that CSB had used reasonable efforts to prevent the child's removal. The juvenile court granted an emergency order of temporary custody.

{¶7} The matter proceeded to an adjudicatory hearing before the magistrate. Thereafter, the magistrate issued a decision dismissing the complaints regarding L.T. and the child's siblings, after finding that CSB had failed to prove its allegations by clear and convincing evidence. CSB filed timely objections, asserting that it had presented clear and convincing evidence to support the children's adjudications as, at a minimum, dependent children; and that it would supplement its objections after the filing of the hearing transcript. The agency later filed its supplemental objections, citing to evidence regarding, inter alia, Mother's drug use during pregnancy and shortly before the child's birth, Mother's failure to visit the child in the hospital, and Mother's lack of stable housing.

{¶8} Mother filed a brief in opposition to CSB's objections. She argued that there was no evidence that Mother's drug use caused any harm to the child who was born healthy. Although she did not dispute the instability of her housing situation, Mother argued that L.T. was not prospectively dependent because Mother had prearranged through a voluntary custody agreement for a suitable couple to take legal custody of the infant upon the child's discharge from the hospital.

{¶9} The juvenile court held a hearing on the objections, during which the attorneys, including the guardian ad litem, were permitted to present arguments. CSB withdrew its objections as to the dismissal of the siblings' cases as Mother had brought them to Grandmother's home. After reviewing the transcript of the adjudicatory hearing, the juvenile court issued a judgment sustaining CSB's objections relating to L.T.'s case. The trial court found that L.T. was a dependent child, but not abused. In support of its dependency finding, the juvenile court found that at the time alleged in the complaint Mother was using drugs, was not

employed, had no stable housing, and had not made any definitive secure arrangements for the child. Mother filed a timely appeal and raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FOUND THE CHILD TO BE A DEPENDENT CHILD UNDER R.C. 2151.04(C), AS THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶10} Mother argues that the juvenile court erred by adjudicating L.T. a dependent child when that finding was against the manifest weight of the evidence. This Court disagrees.

{¶11} Juvenile abuse, neglect, and dependency cases are initiated by the filing of a complaint. *See* Juv.R. 22(A); Juv.R. 10; R.C. 2151.27(A). The complaint is "the legal document that sets forth the allegations that form the basis for juvenile court jurisdiction." Juv.R. 2(F). The juvenile court must base its adjudication on the evidence adduced at the adjudicatory hearing to support the allegations in the complaint. *See In re Hunt*, 46 Ohio St.2d 378, 380 (1976). If allegations in the complaint are not proved by clear and convincing evidence at the adjudicatory hearing, the juvenile court must dismiss the complaint. Juv.R. 29(F)(1); R.C. 2151.35(A)(1). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶12} This Court reviews as follows:

In determining whether the juvenile court's adjudication of dependency is against the manifest weight of the evidence, this court [reviews] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact]

clearly lost its way and created such a manifest miscarriage of justice that the [adjudication] must be reversed[.]

(Alterations sic.) *In re R.L.*, 9th Dist. Summit No. 28387, 2017-Ohio-4271, ¶ 8, quoting *In re C.S.*, 9th Dist. Summit No. 26178, 2012-Ohio-2884, ¶ 5, quoting *In re A.W.*, 195 Ohio App.3d 379, 2011-Ohio-4490, ¶ 8 (9th Dist.).

{¶13} Mother challenges the finding that L.T. is dependent pursuant to R.C. 2151.04(C) which defines "dependent child" as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" This Court recognizes that

[a] dependency finding under R.C. 2151.04(C) does not require specific parental fault; rather the focus is on the child's situation to determine whether the child is without proper or adequate care or support. The conduct of the parent is relevant only insofar as it forms a part of the child[ ]'s environment and it is significant only if it has a detrimental impact on [him].

(Internal citations and quotations omitted.) *In re A.S.*, 9th Dist. Summit No. 29472, 2020-Ohio-1356, ¶ 10, quoting *In re I.T.*, 9th Dist. Summit Nos. 27513, 27560, and 27581, 2016-Ohio-555, ¶ 32.

{¶14} As an initial matter, Mother appears to argue that CSB has forfeited any arguments on appeal that (1) the child was prospectively dependent, and (2) Mother had failed to make arrangements for the child's placement with suitable caregivers upon L.T.'s discharge from the hospital after birth, because the agency did not properly raise those arguments in its objections before the juvenile court. Accordingly, Mother argues that the juvenile court was precluded from relying on such findings when adjudicating L.T. a dependent child.

{¶15} A review of the judgment entry indicates that the juvenile court did not make any finding of prospective dependency.[1] As to the juvenile court's finding that Mother had not made definitive arrangements for the child's safe placement with alternate caregivers, that is merely one fact underlying the issue clearly raised by CSB in its objections. Specifically, the agency argued in its objections that the child's environment warranted the State's intervention and guardianship of L.T. because Mother could not meet the child's basic needs, including the provision of a safe and stable home. That Mother had not arranged for placement of the child with appropriate caregivers in the absence of Mother's own stable housing is merely one factual basis relating to the ultimate issue of the child's environment. Accordingly, the juvenile court was not precluded from relying on this evidence in support of its dependency adjudication as CSB had preserved the issue regarding its presentation of clear and convincing evidence of dependency in its objections. As the agency raised the issue in its objections, it is therefore also preserved for appeal. Mother's argument that CSB was precluded from developing with specificity in its supplemental objections the evidentiary issue it raised in its initial timely objections is not well taken as it disregards the purpose of supplementing objections in consideration of a later-filed transcript.

{¶16} At the adjudicatory hearing, CSB presented evidence that Mother admitted using methamphetamine during her pregnancy with L.T., including shortly prior to the child's birth. Although Mother was staying with her three older children in Grandmother's home late in her pregnancy with L.T., Grandmother made Mother leave the home a few weeks before she gave birth due to Mother's ongoing drug use. Mother admitted that she did not have stable housing

---

[1] This Court does not here make any conclusion regarding the applicability of evidence of prospective dependency to support an adjudication of dependency pursuant to R.C. 2151.04(C).

after she left Grandmother's home. Accordingly, Mother's drug use, irrespective of whether it had any effect on L.T.'s health or development prior to birth, created Mother's housing instability and, concomitantly, impacted the stability of the child's home environment. As Mother had no stable home to which she could bring the child, the child's environment warranted intervention by the State, unless Mother had otherwise made arrangements for the child's care with suitable caregivers. *See In re F.R.*, 9th Dist. Lorain No. 14CA010543, 2015-Ohio-1877, ¶ 9, quoting *In re Riddle*, 79 Ohio St.3d 259, 263 (1997) (agreeing with the rationale of other courts to conclude that "if a child is receiving proper care from relatives to whom the parent had entrusted the child's care, then the child is not a dependent child under R.C. 2151.04.").

{¶17} In this case, the only evidence at the adjudicatory hearing regarding Mother's entrustment of the child's care to others was elicited from CSB's witnesses. The hospital social worker where Mother gave birth testified that Mother had admitted that she had an open child welfare case with CSB regarding her older children and that she was "hoping that a friend of her mother could take custody of the new baby at least temporarily." The social worker further testified that Mother declined to stay in the hospital with L.T. because "she was afraid of getting attached when she knew she wouldn't have custody of the baby[,]" and also because she wanted to "meet with the person she was hoping would get custody of the baby." In addition, the CSB caseworker testified that Mother told her that she intended to give L.T. to a certain couple. There was no evidence, however, that Mother had made any definitive arrangements for the infant's care with the couple or even that the couple had agreed to care for the child upon the child's release from the hospital.

{¶18} Mother argues that, even though she had not secured arrangements for L.T.'s care before the agency filed its complaint, the juvenile court should have considered evidence of Mother's subsequent agreement with the couple for the child's care after the agency filed its complaint. Mother effectively argues that evidence of curative measures taken by a parent to address agency concerns underlying allegations in the complaint can militate against a finding of dependency.

{¶19} This Court has held:

> While it may be a factor relating to disposition, it is unnecessary that the original reason for the finding of dependency exist at the time of the dispositional hearing. R.C. 2151.23(A)(1) requires the juvenile court to decide the issue of dependency as of the date or dates specified in the complaint, and not as of any other date.

*Hood v. Hood*, 9th Dist. Summit No. 14957, 1991 WL 123045, * 2 (Jul. 3, 1991), citing 2 Anderson, *Ohio Family Law*, Section 19.19, at 297-298 (2d Ed.1989). We later clarified that, while evidence of circumstances that occurred after the date(s) specified in the complaint was not necessarily inadmissible at the adjudicatory hearing, we did not overrule *Hood*. *In re J.A.*, 9th Dist. Summit No. 24332, 2009-Ohio-589, ¶ 10, citing *In re D.B.*, 9th Dist. Medina Nos. 03CA0015-M and 03CA0018-M, 2003-Ohio-4526, ¶ 15.

{¶20} Mother's argument has no relevance to this case, however. There was in fact no evidence presented at the adjudicatory hearing that Mother had finalized any arrangements with any other person to provide for the care of L.T. upon the child's release from the hospital after birth. The only evidence presented was that Mother had hoped that a couple she identified would care for the infant when she was unable to do so. The juvenile court did not err in failing to

consider evidence that was not before it, even if evidence of curative measures taken by Mother after the agency filed its complaint would have been admissible in this case.[2]

{¶21} Based on a review of the evidence, this is not the exceptional case where the trier of fact clearly lost its way and created a manifest miscarriage of justice by adjudicating L.T. a dependent child. The clear and convincing evidence supports the finding that L.T.'s environment created a substantial risk and warranted the state in assuming L.T.'s guardianship in the child's interest. Mother had no safe and stable home where she could have brought the child after birth. She lost her appropriate housing with Grandmother due to Mother's drug use and the potential risks of that use which Grandmother refused to tolerate. Mother had not secured another appropriate placement for L.T., as she only hoped that a certain couple would care for the infant. There was no evidence presented at the adjudicatory hearing that Mother's chosen couple had agreed to become caregivers for the child. Accordingly, the juvenile court's judgment adjudicating L.T. a dependent child is not against the manifest weight of the evidence. Mother's assignment of error is overruled.

III.

{¶22} Mother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

---

[2] This Court takes no position whether such evidence would have been admissible here.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
LYNNE S. CALLAHAN
FOR THE COURT

CARR, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

LINDA SELL, Guardian ad Litem.